So we're going to start with BuzzFeed versus the United States of America. Good morning, may it please the court, I'm Matt Topic, I represent the appellant, BuzzFeed. Good morning. The DOJ inspector general found that a senior department official engaged in multiple acts of sexual harassment on the job in the course of carrying out his duties of supervising his subordinates in violation of the DOJ policy that treats sexual harassment as serious misconduct. The government argues that there is no significant public interest in knowing the name of that official and I'd like to focus on why that misunderstands both the relevant case law and the nature and seriousness of the misconduct that the official engaged in here. In Perlman, this court set forth a test for balancing the privacy rights and public interest for instances of government wrongdoing but it did not address the question of public access to the name of the wrongdoer because the name of the wrongdoer was already known in Perlman. But it did rely on the D.C. Circuit decision in Stern and in Stern, the D.C. Circuit squarely found that there is a public interest in knowing the names of government wrongdoers that is separate and apart from the public interest in knowing the details of what the wrongdoing was. In Stern, we had two different categories of government wrongdoers. We had a senior official who engaged in intentional misconduct and we had two lower level employees who merely engaged in negligence. And in the first instance, the D.C. Circuit found there was a sufficient public interest in the name of that public official. But counsel, knowing this information, this information doesn't relate to the running of the department, does it? I would disagree that this does not relate. Explain to me why you think it does. So this is not off the clock sexual harassment. This was in the office, on the job, and while performing the duties of supervising the staff. So there were multiple meetings in which these instances occurred, one of which was even essentially an interview or pre-interview for a job promotion in which there were inappropriate comments that were made that violated the DOJ's sexual harassment policy. So it does, the misconduct is related to job duties. It could also cause the public to view any number of actions or decisions made by this person in a different light, knowing that this person had engaged repeatedly in violations of DOJ policy. And in the words of the OIG, it demonstrated poor judgment in how he carried out the handling of the office. In Stern, can you remind me, was the high level government official still serving? Yes. In Stern, the person was. In Perlman, they were not. Right. And so I guess my question is, you're citing Stern for the proposition that the identity, in addition to all the information about what the allegations were and how the investigation went, is an independently important piece of information for the public to know. Is that, how long is the tail on that? Once somebody leaves government, does the rationale for describing that as important dissipate somewhat when the person's no longer making the decisions that we might view in a different light if we had this information? I think you could certainly say that the factor weighs differently depending on the amount of time that's gone by. And you could weigh the factor differently just merely because the person is no longer an employee. But the accountability and deterrence purposes of FOIA, and this is what was explained in or relied on in Cochran from the 11th Circuit, that there is a public interest in knowing names in order to hold the government officials accountable and in order to deter future misconduct. And so in some ways that applies even more so when the person has retired in the midst of an investigation, as appears to have happened here. There's nothing more the government can do to punish this government official for the wrongdoing associated with what they did. The public has a right to know who that person is so as to serve the deterrent function of not encouraging other officials to engage in similar conduct. So when you say deterrence, to borrow from our criminal law language, are you talking about specific deterrence or general deterrence? By which I mean, because I'm not sure here, are you trying to sort of punish the wrongdoer here? Because I think you made reference to there's nothing more the government can do to him. Or are you trying to send a message to others that one of the consequences of this kind of behavior is not only potentially losing your job or being forced into early retirement, but sort of public shaming. Is it one or the other of those or both? I think it's both and especially deterring. I guess it would be the general deterrent concept that public officials, knowing that if they engage in this misconduct and they retire in the middle of an investigation, they still have to face the fact that as taxpayer-funded public employees, the public has a right to know that they engaged in that misconduct. So is that the difference between in a private entity that even if, so assume for the moment that this official, this now retired official's conduct, did not directly impact government services or activities. The reason the name of that person would be subject to release, whereas that wouldn't normally happen in an internal HR investigation in a private business, is because his job was, his salary is paid by the taxpayers? I mean, that's the entirety of the Freedom of Information Act, right? Well, yes, but this is a personnel investigation, right? So much of FOIA is about the things that the government is doing to serve its constituents as opposed to what the government is doing qua employer versus as a service provider or a governing body, right? This is the government acting in a role as an employer negotiating its internal issues, right? But there's still a public interest in knowing that those things are carried out effectively. And if we look at the DOJ policy, it says that sexual harassment in the workplace jeopardizes the mission of the organization. And so it is more than just sort of an internal issue for its own sake. It is also something that, according to the DOJ itself, can jeopardize the ability to carry out the mission. And there's significant public interest in knowing that it's happened and who was responsible for it. And the privacy invasion that's occasioned, right? I guess your position is that it is warranted. Correct. Because if you look at the totality of the factors, this is a senior official. This is a person who ran an office. This is misconduct. You know, in Perlman, this court just framed it as fairly serious. I think if you look at the DOJ policy, clearly this is at least fairly serious misconduct. This was a finding by the inspector general. This is not an instance in which it was mere accusations and it would be unfair to have someone be subjected to scrutiny when all it was were allegations. And it occurred in the workplace, on the job, and it was a core part of the person's job duties. In one of the immigration judge cases, there's sort of a distinction that it was either the District of D.C. or the D.C. Circuit between in-court misconduct and sort of back-in-the-office misconduct. And the point I'd like to make is that for this official, all of it was in essence in court because this was a manager who was running an office, which is sort of a different setup. Could you briefly address, and I understand that you're not seeking express disclosure of the identities of the witnesses and the surrounding people, but it does seem inevitable that disclosure of the identity of the official will necessarily implicate the privacy interests of those who then at least people in that orbit are going to know who it was.  Absolutely, and that's why we did not ask for the names of those people. Right, but even with the black redaction across the report that blocks out the name, people in that orbit are going to be able to look at that and say, ah, that must have been so-and-so, right, just based on the relationships and the timing and things like that. And is that something we can care about, should care about? That is something you should care about, but the government has not put forth the necessary showing to establish that. Under Halpern and any number of cases, government affidavits have to be fact-specific to support an exemption claim. They have to permit the appellate to contest the affidavit in an adversarial fashion and a reviewing court to engage in effective de novo review. And if it's one paragraph, it's two sentences, it doesn't give us any details that would allow an evaluation of the validity of that claim. If this was an office with 100 people in it and he worked there for 20 years, it's a much different situation than if it's an office with five people in it and he worked there for six months. And we have no idea because the government didn't meet its burden of proof, and it is the government's burden of proof, to show that that was reasonably likely to happen in this instance. So theoretically, yes, absolutely that is a concern, but they have not shown that under the facts of this case that that's likely to happen. Thank you. I can hear from you in a few minutes in rebuttal. Mr. is it? Barnea. Barnea? Barnea. Barnea. I guess it's as high as it goes. Go ahead. Good morning. May it please the Court. My name is J.D. Barnea. I'm an assistant United States attorney, and I represent the U.S. Department of Justice in this case. The inquiry in this case and the Perlman analysis boils down to a single question, whether the disclosure would shed light on the operations or activities of the government. The district court correctly concluded that the disclosure was not warranted based on the standard, and this court should affirm that determination. And do we owe any deference at all to the district court's balancing of the Perlman factors? This is a de novo determination on a legal question, so no. But nonetheless, I think that the district court thoughtfully engaged with these factors, and we think that it correctly engaged with these factors. But legally, this is a de novo review. I'd like to pick up on a couple of points that I just heard on the other side. I'm getting a little feedback from this microphone before talking more generally about the points that we have. One is the notion that FOIA release should be punishment for a wrongdoer. That is completely incorrect. The Department of Justice, like every employer, public or private, has a disciplinary process for employees who violate its rules. There are, in fact, disciplinary processes that even apply when employees resign mid-investigation. Those are the processes and those are the rules that govern what happens to this individual. A FOIA release is not a punishment for violating personnel rules, protocols, and sexual harassment policies. A FOIA release is something that is determined based on the standard, and the standard is would release in this context for Exemption 7C, the question is whether the release would shed light on the operations or activities of the government. There is nothing about knowing this person's name that would shed light on the activities of the government. The activities of the government were identifying that this person was engaging in wrongdoing, investigating him, and publishing a report about him, and perhaps whatever disciplinary actions happened after he resigned and after the report came out. That is the subtotal of that, and knowing the person's name does not shed any light on it. The factors that the Perlman analysis asks us to consider are all designed to get at the relevant question. So the seniority of the person may affect whether we're learning something about the government and its operations from wrongdoing. But more importantly, factors such as whether the information sheds light on government activity. This is a factor that goes to the heart of the inquiry, and the Supreme Court in DoD versus Federal Labor Relations Authority pointed out that this is the only relevant factor in assessing whether a 7C release should be made. The cases in which releases were deemed justified involved situations where the wrongdoing affected the functioning of the agency itself. I mean, this is happening. This isn't outside of work harassment. This is in the workplace, and it's somebody who's a top-level official in the workplace. Isn't that sort of inherently about how the agency is functioning? Well, it's about this person's interactions with the specific subordinates that he interacted with and that they may have been inappropriate, but it does not have anything to do with what Perlman referred to as the public duties of the employee or the aspects of the employee's duties that affect how the agency interacts with the public or how the agency engages in its mission. I think my colleague here pointed out the immigration judge case from the D.C. Circuit, the AILA case. In that case, the courts distinguished between in-court behavior and out-of-court behavior as one of the factors that was relevant to deciding which immigration judge's name should be released. In-court behavior, as we can all imagine, relates to the functioning of the judge as a judge and adjudicating cases, and out-of-court behavior was cited as a factor that would weigh against release, and out-of-court behavior in that case was defined specifically to include interactions with staff. That is more, as Your Honor pointed out, a personnel issue rather than having to do with the functioning of the judge, the immigration judge, as a judge adjudicating cases, deciding cases. Would your position be the same if the subject of the investigation still held a high-level position in the agency? I, you know, this is a multi-factor test, so that fact would certainly be one sort of grain of sand in the opposite direction. I don't think that it would tilt the ultimate weight and the ultimate decision in the opposite direction, but it would certainly make it less tilted in a certain direction, I think. But that is certainly, and that in the AILA case as well, that is one of the factors that the court considered, whether some of these judges had retired these immigration judges and others had not, and it specifically decided that the retired immigration judges were entitled to a greater presumption of privacy than the non-retired ones. But you're describing it as a grain of sand, not a rock or a boulder. Depends on how big the scale is. Oh, okay. Good point. Counsel, we've just been talking about personnel matters. I want to be clear. I think the district court looked at two exemptions. It looks like six and 7C. I think you're relying only on 7C at this point. Is that right? Well, no, the district court noted that six is slightly less protective of privacy than 7C is, and so essentially if you examine the inquiry under 7C, you're making the same decision as you would under 6. Or in fact, there would be perhaps, it would work the other way around. So if you're not entitled to the protection under 7C, you wouldn't be entitled to the protection under 6. Well, so 7C is for law enforcement and 6 is not. Correct, but 7C- No, no, I understand that the sort of unwarrantedness question is how that works. So my next question is, why is this a law enforcement investigation? OIG investigations are- I understand, but OIG in this circumstance is not being OIG. It's the HR office. So if this investigation occurred in some other agency that didn't have its own OIG, if it occurred in the Federal Defender's Office, the counterpart to DOJ in some ways, that doesn't have an OIG and it was investigated by HR, 7C wouldn't apply, right? I don't know anything about how FOIA applies to the Federal Defender's Office. Well, this is a law enforcement exemption. So my question is, by having OIG conduct what are in most offices HR investigations, is that sweeping a whole category of conduct into 7C that arguably is not-it's not law enforcement. OIG is a law enforcement actor, but the investigation it's conducting is a personnel investigation. I don't believe it was contested in any case, and I believe it's well settled that OIG investigations in general are law enforcement. Well, it's well assumed it looks like to me based on the case law. But I don't think that there's any reason to think-I think it's a complicated situation that happens whenever there needs to be investigations into DOJ employees' conduct as to whether OIG handles it. There are other arms of the Department of Justice to handle, for example, attorney misconduct or other types of issues that sometimes the component itself investigates it. But, you know- Are all personnel matters, though-are there any personnel matters that are not investigated, this kind of thing, that are not investigated by OIG no matter what your role is in the agency? I hear you saying that lawyers might be treated differently, but if there is a-someone that doesn't fall in a special bucket, your run-of-the-mill HR investigation for workplace conduct issues would come under OIG every time? I'm not a specialist in this area, but based on what I believe I've read, I think it's something like OIG has a right of first refusal to deal with certain types of investigations, and some of them it takes on, and others it delegates back to the component to investigate, perhaps more minor matters, and then attorneys, again, if there's an attorney misconduct that's handled by a different office, some kind of professional responsibility office or something like that. All right. So, well, I suppose if the Court doesn't have any further questions, I'm happy to give up the rest of my time. Thank you very much. Thank you. Mr. Topic, two minutes. Thank you. On the exemption 7C question, I mean, the district court did address this, and the purpose of the investigation was to determine whether there had been any violation of law, regulation, or policy, and I think in those instances it would fall under 7C. That actually just highlights the seriousness of the wrongdoing here. So you don't contest that it's appropriate to consider this under 7C and move to the question of the factors? Correct. Okay. That's correct. We've never challenged that. I just wanted to circle back to some of the other decisions that, again, are specific to names. In both AP and HUD, this Court acknowledged that it was the public interest in knowing about the wrongdoing or the activities or the character, actually, of the agency or officials. So twice this Court has gone beyond just sort of the agency as a vague entity and actually said it also looks at the character of the individuals in HUD. This Court said that it would have been inappropriate to withhold the names of high-level officials that oversaw this investigation. And in the PLN case, the Prison Legal News case from D.C., which we cited, it specifically talks about how it does shed light on the activities of government to know whether there have to know the names of government wrongdoers who have repeatedly engaged in discriminatory conduct, and that's exactly what we have here. In essence, the government is arguing for a blanket rule that would never allow you to get the names of government wrongdoers because you could always make this kind of argument that if you know the misconduct, you don't really need to know the names. That's not what this Court said in Perlman. That's not what this Court has said in other cases. It's not what the D.C. Circuit has said or the Eleventh Circuit has said. So the case law overwhelmingly leans towards or outright holds that there is a public interest in knowing the names of wrongdoers. With that, I have no further. Thank you. Appreciate both your arguments. Thank you.